# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

JOANN P. COOPER,                  :

    Plaintiff,                :

vs.                               :     CA 10-0330-CB-C

ESCAMBIA COUNTY COMMISSION,       :
et al.,
                                  :
    Defendants.

## ORDER

JoAnn Cooper has filed a motion for reconsideration of the order signed by the undersigned on August 1, 2011—and e-mailed to the parties on August 2, 2011—which denied her motion to amend scheduling order (Doc. 57). This motion is **DENIED** pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Rule 72.2(a).

Cooper's motion for reconsideration reads, almost in its entirety, as follows:

> 2.    Cooper seeks this extension to take depositions, with requests for production attached, of four individuals and does not expect [] the total time of these depositions to exceed 8 hours. Before receiving the Court's Order denying the requested extension (which is dated August 1, 2011 but which was not e-filed and received until late in the day on August 2, 2011), the undersigned delivered Notices of Deposition to the County pursuant to agreed-upon dates, not knowing whether the extension would be approved. If the extension is approved, the requested depositions would be noticed for August 18 and 24. A portion of the proposed Requests for Production attached to the Deposition Notices are for the documents or other evidence the County and the Sirmons mentioned in their initial disclosures but none of which have been provided.

3.  Two extra-ordinary circumstances warrant the requested extension: the procedural posture of this case, and the enormous burden to the Appellant in arranging to come from Nashville, Tennessee to south Alabama to participate in discovery proceedings.

4.  Contrary to the Magistrate Judge's findings of fact, the procedural "dust" in this case regarding which, if any, claims would survive the Counter-Defendants various Motions to Dismiss did not settle until July 5, 2011, less than one month before the discovery cutoff. The County and the Sirmons filed Answers on July 19, 2011, less than two weeks before the discovery cutoff.

5.  In other words, the Appellant only learned what contentions were at issue, and therefore which issues to address in discovery, less than two weeks before the cutoff. For example, only on July 19, 2011 did Appellant learn that the Sirmons deny knowledge of the existence of Christmas Tree Lane and even deny owning the property on which Christmas Tree Lane is situated. Given these blanket denials, the Appellant feels the most efficient method of discovery is to take depositions with attached requests for production.

6.  Cooper commenced her efforts to schedule depositions in plenty of time to complete the requested discovery, at least if the other parties had cooperated the way she did. She began at the same time as the County and in the same manner. The notice of deposition mentioned in the Court's order was filed pursuant to an agreed-upon date, which agreement was reached simply by response to the County's e-mail request for dates for her availability. All it took for the County to obtain her deposition was to ask by e-mail, not some unilateral action on their part.

7.  Conversely, when the undersigned made the same request in the same manner, (by e-mail to both Anna Scully and Jim Rossler), they both initially ignored that first request. Eventually, the County indicated that it would work to get the requested depositions scheduled but the Appellant cannot be present on just any day, cannot simply pick up and drive 6 hours on a moment's notice, and certainly cannot afford to unilaterally schedule a deposition, undertake the expense of arranging for a court reported to come to Atmore, AL from Mobile or Montgomery and hope that someone shows up. If no one did, the expenses (not to mention the stress and fatigue that trip causes the 62 year old Appellant) related to

2

the trip from Tennessee and court reporter would be for naught and would have to be repeated.

      8.     The County is not opposed to extending the discovery and dispositive motion deadlines, and on Monday, August 1, 2011 provided dates for the depositions at the next time the Appellant could be present, the week of August 14, 2011, less than a month after the County and the Sirmons filed their answers. The County also indicated that the requested depositions should take place before any ADR is attempted.

      9.     The Sirmons' attorneys simply declined to return phone calls or answer e-mails concerning the matter. It was impossible to "confer" as required by the Court's standing order because the Sirmons would not reply one way or the other. The only opportunity to "confer" happened at Cooper's July 20 deposition, when attorney Wasden face-to-face said he would let the undersigned know the following day whether his client was available during the time Cooper was present in Alabama for her deposition. Attorney Wasden even went so far as to suggest a convenient location in Atmore to hold the depositions.

      10.    That in-person conference was the last communication from the Sirmons regarding depositions until August 2, when Anna Scully finally replied by e-mail that she had been out of the office due to a family illness and was conferring with the Sirmons about the provided dates.

      11.    The only discovery to do is simply to take approximately 8 hours worth of depositions involving 4 deponents. The extension would not delay the pre-trial conference, the trial date or any dates subsequent to the time of the requested extension.

      12.    In summary, the contentions in this case have only been put in issue since July 19, 2011. Appellant appeared for her deposition the following day and the undersigned wrongfully assumed that an in-person conference would resolve the matter but could not get a response from the Sirmons' attorneys before Appellant had to return to Tennessee. The physical and financial cost associated with unilaterally noticing a deposition of someone who may not show up is simply too great but the undersigned trusts now that attorney Scully has returned and had an opportunity to confer with her clients, that, subject to the Court's approval, all the discovery Appellant intends to conduct would be completed on August 18 and 24, 2011.

3

(*Id*. at 1-4 (internal citations omitted).) The undersigned has set forth almost the entirety of Cooper's motion for reconsideration because nowhere in the motion does the movant set forth the proper legal framework for requesting reconsideration or how her motion falls within that framework.

The Magistrate Judge notes that motions to reconsider generally fall within the purview of Rule 60(b) of the Federal Rules of Civil Procedure, *see Preserve Endangered Areas of Cobb's History, Inc. v. United States Army Corps of Engineers*, 916 F.Supp. 1557, 1560 (N.D. Ga. 1995) ("[T]he term 'motion for reconsideration', as such, does not appear in the Federal Rules of Civil Procedure. The title of Fed.R.Civ.P. 60(b), under which a so-called motion for reconsideration may be brought, further attests to its extraordinary nature . . . . '[Rule 60(b)] is "properly invoked where there are extraordinary circumstances, or where the judgment may work an extreme and undue hardship" . . . .'"), *judgment aff'd*, 87 F.3d 1242 (11th Cir. 1996), as well as Fed.R.Civ.P. 59(e), *see Pennsylvania Ins. Guar. Ass'n v. Trabosh*, 812 F.Supp. 522, 524 (E.D. Pa. 1992) ("A motion for reconsideration of a final judgment will generally be construed as a motion under Federal Rule of Civil Procedure 59(e) to alter or amend the judgment if the motion does not cite a specific federal rule.").[1]

---

[1] The standard for reconsideration under both rules is the same. *Compare Johnston v. Cigna Corp.*, 789 F.Supp. 1098, 1101 (D. Colo. 1992) ("A Fed.R.Civ.P. 59(e) motion to alter or amend judgment may properly be cast in the form of a motion to reconsider. . . . There are three major grounds that justify reconsideration: (1) an intervening change in the controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice."), *aff'd*, 14 F.3d 486 (10th Cir. 1993), *cert. denied*, 514 U.S. 1082, 115 S.Ct. 1792, 131

4

In the interests of finality and conservation of scarce resources, reconsideration of an order is an extraordinary remedy which is to be employed sparingly. *United States v. Bailey*, 288 F.Supp.2d 1261, 1267 (M.D. Fla. 2003), *aff'd*, 419 F.3d 1208 (11th Cir. 2005); *Pennsylvania Ins. Guar. Ass'n, supra*, 812 F.Supp. at 524; *see also Spellman v. Haley*, 2004 WL 866837, *2 (M.D. Ala. 2002) ("[L]itigants should not use motions to reconsider as a knee-jerk reaction to an adverse ruling."). Nonetheless, reconsideration is proper when newly discovered evidence is brought to the court's attention or clear error has been shown. *See* Fed.R.Civ.P. 60(b)(2); *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996) ("Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence."); *Summit Medical Center of Alabama, Inc. v. Riley*, 284 F.Supp.2d 1350, 1355 (M.D. Ala. 2003) ("A motion to reconsider is only available when a party presents the court with evidence of an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice."). In considering Cooper's request, however, the Court bears in mind that such motions are not a platform to relitigate arguments previously considered and rejected. *See Lazo v. Washington Mutual Bank*, 2001 WL 577029, *1 (9th Cir. 2001) (motion to reconsider is properly denied where movant merely reiterates meritless arguments). Moreover, motions to reconsider may not be used to set forth new theories of law that could have been raised previously. *See Mays v. United*

---

L.Ed.2d 720 (1995), *with PEACH, supra*, 916 F.Supp. at 1560 ("[T]he [Rule 60(b)] motion [for reconsideration] should be reserved for certain limited situations, namely the discovery of new evidence, an intervening development or change in controlling law, or the need to correct a clear error or prevent a manifest injustice.").

*States Postal Service*, 122 F.3d 43, 46 (11th Cir. 1997). Finally, "'a motion for reconsideration is not an opportunity for the moving party and their counsel to instruct the court on how the court "could have done it better" the first time.'" *Deerskin Trading Post, Inc. v. United Parcel Service of America, Inc.*, 972 F.Supp. 665, 674 (N.D. Ga. 1997), *quoting PEACH, supra*, 916 F.Supp. at 1560.

Cooper's wholesale failure to set forth a proper basis for the undersigned's reconsideration of the August 1, 2011 order (entered on the docket, August 2, 2011), alone, requires that the reconsideration motion (Doc. 57) be **DENIED**. In addition, the Court notes that Cooper has certainly set forth no newly discovered evidence which warrants a reconsideration of the undersigned's order nor has the movant set forth an intervening change of controlling law or a manifest error of law made by the undersigned warranting reconsideration. Finally, Cooper has not shown through the present motion that this Court made a clear error of fact that it need correct to prevent manifest injustice. In this regard, Cooper's only suggestion that the undersigned made an error of fact is her statement that "[c]ontrary to the Magistrate Judge's findings of fact, the procedural 'dust' in this case regarding which, if any, claims would survive the Counter-Defendants various Motions to Dismiss did not settle until July 5, 2011, less than one month before the discovery cutoff." (Doc. 57, at ¶ 4.)[2] Cooper, of course, has taken the undersigned's initial finding of fact out of context because the undersigned's

---

[2] The majority of Cooper's motion merely consists of counsel's elaboration of the difficulties he experienced in trying to procure deposition dates from defense counsel. (*See* Doc. 57, at ¶¶ 6-10; *compare id. with* Doc. 48.)

6

finding—a correct finding, by the way—was that "[o]nce the dust settled and a decision was made that the case would not be remanded to the Circuit Court of Escambia County, Alabama or dismissed (*compare* Docs. 9-10 & 12 *with* Doc. 19), the undersigned ordered the parties to file a Rule 26(f) report (Doc. 22)." (Doc. 53, at 1-2.) The undersigned's reference to the fact that the case would not be dismissed, as apparent from the documents cited to in support thereof, was directed to the County's argument that the case was due to be dismissed for lack of jurisdiction (*compare id. with* Doc. 12). It was based upon this fact (that is, resolution of the jurisdictional issue), the fact that the undersigned adopted the parties' suggested discovery cutoff date of August 2, 2011 (*compare* Doc. 25, ¶ 4 *with* Doc. 27, at ¶ 2), and Cooper's inability to establish due diligence in complying with the scheduling order, as well as exceptional circumstances supporting a modification of that order, that the undersigned denied Cooper's motion to amend scheduling order. (*See* Doc. 53.) The "procedural dust" about which Cooper now speaks in her motion for reconsideration, was a result of nothing other than her own making in filing her amended complaint (Doc. 24; *compare id. with* Docs. 32, 34-35, 37 & 43) and certainly in no way establishes why she was unable to discern more than seven days before the discovery cutoff date that she would be unable to timely complete discovery and the reasons therefor.[3] Accordingly, Cooper has not set forth any basis for

---

[3]  The undersigned need address certain suggestions made by Cooper in the motion for reconsideration. First, the suggestion that she "only learned what contentions were at issue, and therefore which issues to address in discovery, less than two weeks before the [discovery] cutoff[]" (Doc. 57, at ¶ 5) is belied by her earlier statement that "[a] portion of the proposed Requests for Production attached to the Deposition Notices are for the documents or other

evidence the County and the Sirmons mentioned in their initial disclosures but none of which have been provided." (*Id*. at ¶ 2.) At the very least, then, Cooper could have requested production of such documents from the County defendants and the Sirmons through written discovery propounded after those disclosures were made. (*Compare id. with* Doc. 38 (initial disclosures by county defendants made on March 14, 2011).) Moreover, in truth, given the nature of this case and Cooper's position throughout it, she certainly could have deposed the county defendants and the Sirmons before receiving their answers to her amended complaint; nothing would have prevented her from questioning the other parties at length about the facts surrounding her amended complaint, the claims made therein, and their defenses to same.

Second, the suggestion that she could not unilaterally notice the depositions of the county defendants and the Sirmons and expend money for the taking of same merely "in hope[]s" that someone would show up (*see* Doc. 57, at ¶ 7) ignores the fact that a party who fails to attend a properly-noticed deposition will be required, upon proper motion, to pay the expenses caused by such failure to attend, *see* Fed.R.Civ.P. 37(d)(1)(A)(i) ("The court where the action is pending may, on motion, order sanctions if: [] a party or a party's officer, director, or managing agent—or a person designated under Rule 30(b)(6) or 31(a)(4)—fails, after being served with proper notice, to appear for that person's deposition[.]"). Third, as it relates to Cooper's pursuit of discovery, particularly scheduling depositions, the undersigned is unfamiliar with any requirement that Cooper herself has to personally "participate in [all] discovery proceedings[]" (Doc. 57, at ¶ 3), including every deposition scheduled. *Cf.* Fed.R.Civ.P. 30(g)(1) ("A party who, expecting a deposition to be taken, attends in person ***or by an attorney*** may recover reasonable expenses for attending, including attorney's fees, if the noticing party failed to: [] attend and proceed with the deposition[.]"). Fourth, the "conferencing" requirement referenced in this Court's Rule 16(b) scheduling order (Doc. 27, at 3) pertains solely to discovery motions, not to deposition notices and the scheduling of depositions (*compare id.* ("The following requirements pertain to discovery motions filed in this Court: a. <u>Conferencing by Counsel</u>. The conferencing requirement of Rules 26(c)(1), 37(a)(1), and 37(d)(1)(B), Fed.R.Civ.P., will be strictly enforced. . . . Any such motion not containing the required certification will be stricken.") *with* Doc. 57, at ¶ 9 ("It was impossible to 'confer' as required by the Court's standing order because the Sirmons would not reply one way or the other.")).

Finally, any suggestion by Cooper that she cannot take any depositions in this case without receiving this Court's approval of her requested extension (*see* Doc. 57, at ¶ 2 ("Before receiving the Court's Order denying the requested extension . . ., the undersigned delivered Notices of Deposition to the County pursuant to agreed-upon dates, not knowing whether the extension would be approved. If the extension is approved, the requested depositions would be noticed for August 18 and 24.")) is incorrect. Parties can, and do, engage in discovery by consent after a discovery deadline has expired. Therefore, if plaintiff has an agreement with the County (and, for that matter, the Sirmons) regarding certain depositions, this Court certainly has no problem with the parties conducting such consensual discovery. It is simply this Court's position that it will not arbitrate any disputes that may arise during the course of such consensual discovery.

the undersigned to reconsider the order dated August 1, 2011 (and entered August 2, 2011).

In light of the foregoing, Cooper's motion for reconsideration (Doc. 57) is **DENIED**.

**DONE** and **ORDERED** this the 5th day of August, 2011.

                s/WILLIAM E. CASSADY
            **UNITED STATES MAGISTRATE JUDGE**